**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 17-1641 & 17-1754

———————

MIKAEL M. SAFARIAN,
                    Appellant in No. 17-1641

v.

AMERICAN DG ENERGY, INC.,
                    Appellant in No. 17-1754

v.

MULITSERVICE POWER, INC.

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-10-cv-06082)
District Judge: Honorable Anne E. Thompson

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
November 16, 2017

———————

Before:  VANASKIE, SHWARTZ, and FUENTES, *Circuit Judges*

(Opinion Filed:  April 4, 2018)

———————

OPINION[*]

———————

—————————————

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

Appellant Mikael Safarian brought this action against Appellee American DG Energy, Inc. ("ADG") claiming, *inter alia*, wrongful discharge from employment under state and federal law. After granting summary judgment for ADG on Safarian's federal and state statutory claims, the District Court proceeded to a jury trial on Safarian's state common law claim. The jury returned a verdict in favor of ADG, specifically finding that Safarian was not an employee of ADG under New Jersey common law. While both parties appeal several of the District Court's rulings, the central issue on appeal is whether Safarian was an employee of ADG under federal and state law. Safarian maintains that the District Court improperly granted summary judgment to ADG on his federal and state statutory claims and improperly instructed the jury on employment status on his state common law claim. Because we find no error with regard to the District Court's rulings or the jury instructions, we will affirm.

I.

A.

We previously set forth the undisputed background of this case in *Safarian v. American DG Energy Inc.*, 622 F. App'x 149 (3d Cir. 2015)(*"Safarian I"*), and repeat it here:

> ADG operates in the utility business, and Safarian is an engineer who serviced and installed ADG's machines from approximately December 2006 to April 2010. Safarian worked for ADG Mondays through Fridays, as well as some weekends, working at least 40 hours and sometimes over 50 hours per week. ADG told him which job site to visit and which services to perform. ADG provided Safarian with

materials to install and fix its devices, business cards, cellphone, beeper, business email address, and clothes with the company logo. His supervisor described him as ADG's "boots on the ground" and "a face of the company."

Safarian originally understood that he was "being hired as a full-time employee," but then ADG told him "that it was to the best of the company's interest to temporarily put you on as a subcontractor." As a result, Multiservice, a company that Safarian owned, invoiced ADG and Multiservice paid Safarian. Multiservice invoiced ADG for Safarian's time on a per-hour basis. Safarian occasionally brought an assistant to the ADG job sites, and Multiservice billed ADG for the assistant's labor as well. Safarian also took a non-ADG job in Russia for two months.

While working at ADG sites, Safarian discovered that ADG was performing certain work without appropriate permits and that ADG was overbilling customers. Safarian objected to ADG's permit violations and overbilling practices. Safarian claims that ADG terminated him in retaliation for these disclosures.

*Id*. at 150 (internal citations omitted).

After he was terminated, Safarian brought claims under *Pierce v. Ortho Pharmaceutical Corporation*, 417 A.2d 505 (N.J. 1980),[1] the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq.*[2] Safarian and ADG cross-moved for

---

[1] *Pierce* held that an at-will employee has a cause of action for wrongful discharge if the termination of the employee "is contrary to a clear mandate of public policy." 417 A.2d at 512.

[2] Additionally, Safarian brought claims for violations of the Dodd–Frank Wall Street Reform and Consumer Protection Act, violations of New Jersey's Wage and Hour Law, breach of contract, and promissory estoppel. We affirmed the District Court's grant of summary judgment in favor of ADG on these claims in *Safarian I*, 622 F. App'x at 152–53. These claims are therefore no longer at issue in this case.

3

summary judgment. The District Court granted ADG's motion for summary judgment on all three claims, concluding that Safarian was not an employee of ADG and thus could not bring claims pursuant to the FLSA, CEPA, or *Pierce*. *Safarian I*, 622 F. App'x at 150–51.

We vacated on appeal, concluding that the District Court did not adequately consider "the factors that are important for determining employment status . . ." under federal and state law. *Id.* at 150, 152.[3] We remanded the matter to the District Court with instructions to apply the proper tests under federal and state law.

On remand, the District Court applied the relevant federal and state standards. **(App. at P00009-19).** Concluding that Safarian was not an employee under the FLSA or CEPA as a matter of law, the District Court granted summary judgment to ADG on those claims. **(App. at P00014; P00017).** On the common law *Pierce* claim, however, the District Court determined that there was a genuine dispute of material fact with regard to Safarian's employment status and denied summary judgment. **(App. at P00019).** Additionally, in a footnote, the District Court rejected ADG's alternative argument that Safarian had waived his common law *Pierce* claim by simultaneously pursuing a statutory CEPA claim. **(App. at P00018 n.4).**

---

[3] Judge Hardiman dissented in part with regard to the Panel's decision to vacate and remand the FLSA claim. According to Judge Hardiman, the record supported the District Court's conclusion that Safarian was not an employee of ADG for the purposes of that federal law. *Safarian I*, 622 F. App'x at 153 (Hardiman, J., dissenting in part).

4

Both parties moved for reconsideration of the District Court's decision. **(App. at P00021; P02056).** The District Court denied the motions for reconsideration.

With regard to the *Pierce* claim, ADG filed a motion *in limine* to limit the scope of evidence that Safarian could present. The District Court converted the motion to one for summary judgment and ruled that Safarian was limited to introducing evidence that ADG had violated the public policy against fraud when it terminated Safarian after he objected to ADG's overbilling practices. **(App. at P00027).**

The trial on Safarian's *Pierce* claim began on February 6, 2017. The jury returned a unanimous verdict in favor of ADG on February 14, 2017, finding that Safarian was not an employee of ADG within the meaning of *Pierce*. **(App. at P00475).** Having disposed of the case on this threshold issue, the jury did not reach the question of ADG's liability. **(App. at P00475-76).** The District Court made three noteworthy rulings during trial—one with regard to the admissibility of certain evidence and two with regard to the jury instructions.

Both parties appeal the summary judgment and reconsideration orders. Additionally, Safarian appeals the District Court's evidentiary ruling and jury charge.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. In general, we exercise plenary review over an order granting summary judgment. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal citations omitted). With respect to Safarian's employment status, we consider it "a legal conclusion, and 'thus, our standard of review

of th[at] legal determination . . . is plenary.'" *Safarian I*, 622 F. App'x at 151 (quoting *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1292 (3d Cir. 1991) (internal brackets omitted)). Our review of whether a district court's jury instruction misstated the applicable law is also plenary. *Egan v. Del. River Port Auth.*, 851 F.3d 263, 269 (3d Cir. 2017). We review evidentiary rulings of a district court for abuse of discretion. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009).

III.

We will first address Safarian's common law claim for wrongful termination, *i.e.*, his "*Pierce*" claim, where the jury determined that Safarian was not an employee for purposes of New Jersey common law. We will then turn to the District Court's grant of summary judgment in favor of ADG on Safarian's statutory claims.

A.

At issue with respect to the *Pierce* claim is the following jury instruction:

> Now, you must evaluate the working relationship between Mr. Safarian and his company, Multiservice Power, with ADG. The first question that you will consider in your deliberations is whether Mr. Safarian has proved to your satisfaction by a preponderance of the credible evidence that he was in effect ADG's employee under the law. He contends that he was ADG's employee under the law, while [ADG] contends that he was not; but rather, that he was an independent contractor who worked through his own company, Multiservice Power, of which he was an employee.
>
> Now, for purposes of this case, whether an individual is characterized as an independent contractor or an employee under the law, does not depend on the nominal label adopted by the parties; but rather, on the main features of the parties' relationship and the specific context. You should consider the

6

following factors as you deliberate on the evidence in the case and try to decide this question . . . .

The following factors you should consider in making this decision [are]: (1) ADG's degree of control over Mr. Safarian. Greater control tends toward employee status[;] (2) Mr. Safarian's economic dependence upon ADG. Greater dependence tends toward employee status[; and] (3) Contractual employment protection. Less contractual protection tends to signify employee status. You have to weigh these factors and consider them, and you must decide these elements as your consideration of them predominate over factors that may signify independent contractor status.[4]

(App. 421–22).

"The categorization of a working relationship depends not on the nominal label adopted by the parties, but rather on its salient features and the specific context in which the rights and duties that inhere in the relationship are ultimately determined." *MacDougall v. Weichert*, 677 A.2d 162, 166 (N.J. 1996) (internal citation omitted). As the New Jersey Supreme Court has explained, "[t]he critical issue is whether the elements of control and dependence coupled with the absence of any employment protection predominate over factors that favor an independent contractor status." *Id.*

---

[4] The parties have provided the Court with a copy of the written jury instructions, which were provided to the jury during deliberations, and a transcript of the instructions that were delivered to the jury verbally. In the written version, the last sentence of this portion of the charge reads: "You must decide if these elements predominate over factors that signify independent contractor status." (App. 383). Otherwise, these versions do not differ in any material respect. Accordingly, we follow the example set by the parties and cite to the transcript.

Safarian argues that the District Court improperly instructed the jury to consider Safarian's relationship with Multiservice in determining whether he was an employee of ADG. **(Appellant's Br. at 33).** He also contends that the District Court failed to instruct the jury that none of the *Pierce* factors for employment status is determinative. **(Appellant's Br. at 33).** Upon review of *Pierce* and *MacDougall*, however, we find that the jury instructions were entirely consistent with New Jersey common law. Moreover, Safarian has failed to cite any authority indicating that his proposed instructions were necessary. **(Appellant's Br. at 32-35).**

In support of his position that the jury was confused by the District Court's reference to his company, Multiservice, Safarian refers to a note that the jury sent to the Court during its deliberations. **(Appellant's Br. at 34–35).** The note read: "[W]hat does contractual protection mean in deciding whether the Plaintiff is an employee as opposed to an independent contractor?"[5] (App. 469). After conferring with counsel, the District Court responded with a note stating: "Dear Jury: There was no contractual relationship between the Plaintiff and the Defendant." (App. 470). We agree with the District Court's conclusion that this note questioned the contractual relationship between Safarian and ADG, not Safarian and Multiservice. Because the parties agreed that Safarian did not have a contract with ADG and the jury was so informed, this note

_____

[5] Although neither party provided us with a copy of the note, the parties agree that the transcript accurately reflects its content. **(Appellants' Br. at 34; Appellee's Br. at 35).**

8

cannot reasonably be read as indicating jury confusion arising out of the District Court's reference to Multiservice.

Because the District Court did not err in instructing the jury, we will not disturb the verdict on these grounds.[6]

B.

Having addressed the challenges to Safarian's common law claim, we move to his federal statutory claim. In particular, Safarian argues the District Court erroneously granted summary judgment to ADG on his FLSA claim.

Under the FLSA, "the term 'employee' means any individual employed by an employer." 29 U.S.C. § 203(e)(1). As we explained in *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, "[w]hen determining whether someone is an employee under the FLSA, economic reality rather than technical concepts is to be the test of employment. Under this theory, the FLSA defines employer expansively, and

---

[6] We need not reach the parties' remaining arguments on the *Pierce* claim. Safarian contends that the District Court erred to the extent it limited the scope of his *Pierce* claim to a fraud theory based on overbilling. **(Appellant Br. 35-37).** In light of the jury verdict on the threshold issue of employment status, we need not consider this argument. Safarian also contends the District Court erred to the extent it excluded certain testimony as hearsay. Even if it was error to exclude this testimony, any error was harmless, as the jury's sound verdict disposing of the *Pierce* claim negated any obligation to consider the elements of *Pierce* liability. And finally, ADG argues the District Court erred when it declined to grant summary judgment in favor of ADG on the *Pierce* claim, declined to reconsider its ruling, and permitted the claim to proceed to trial. (**Appellee's Br. at 54, 59**). In particular, ADG contends the *Pierce* claim was waived and, in the alternative, Safarian had failed to identify a clear mandate of public policy in support of his *Pierce* claim. Again, in light of the verdict in favor of ADG on the threshold issue of employment status, reversal on these issues will not affect the outcome of this case. Accordingly, we need not consider them.

9

with striking breadth." 683 F.3d 462, 467 (3d Cir. 2012) (internal citations and quotation marks omitted). In assessing the "economic reality" of the relationship, courts consider six, non-dispositive factors:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin*, 949 F.2d at 1293 (quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985)). Although courts may consider how the parties choose to structure their employment relationship, our analysis is controlled by the economic reality of the relationship under the *Martin* factors, not its structure. *Safarian I*, 622 F. App'x at 151.

Consistent with our remand order, the District Court reasoned through each of the *Martin* factors, and it concluded that Safarian was an independent contractor, not covered by the FLSA as a matter of law.[7] **(App. 14).** Applying the *Martin* factors, we agree that this conclusion is supported by the undisputed evidence in the record. As the District Court noted, there was evidence that Safarian was an engineer who worked for

---

[7] It appears the District Court considered "[t]he economic realities of the relationship" as a factor, separate and apart from the *Martin* factors. *Safarian v. Am. DG Energy Inc.*, Civ. No 10-6082, 2015 WL 12698441, at *5 (D.N.J. Nov. 24, 2015). Rather, the *Martin* factors guide courts in ascertaining the economic reality of an employment relationship. *See Safarian I*, 622 F. App'x at 152. Accordingly, we read the District Court's analysis as resulting in a conclusion that Safarian was an independent contractor, despite the fact that Safarian worked almost exclusively at ADG and that his work was an integral part of ADG's business. **(App. 10-14.)**

ADG five days per week over the course of three years. There was likewise evidence that, although ADG supplied Safarian with some materials, Safarian owned many of his own tools and his truck. Additionally, there was evidence that Safarian was paid by ADG through Multiservice, a company which he owned.[8] It was undisputed that Multiservice billed ADG by invoice, maintained its own insurance, filed its own payroll taxes, hired its own accountants, owned its own company vehicle, and contracted out other employees. It was also undisputed that Safarian received certain small business benefits through Multiservice, such as tax benefits, by describing himself as an employee of Multiservice who was contracted out to ADG.

Safarian counters by pointing to several facts that could support a finding that he was an employee. For instance, Safarian notes that he was required to attend ADG business meetings; that he assisted in ADG's hiring; that ADG provided him with a business card, email address, clothing, cell phone, computer, and beeper; and that Safarian needed ADG's permission to take vacation. **(Appellant's Br. at 27–28).** We recognize that these facts may suggest Safarian was an employee rather than an independent contractor. We are, however, guided by the Supreme Court's statement in *Rutherford Food Corporation v. McComb*: "the determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity." 331 U.S. 722, 730 (1947). As we noted above, the District Court's finding

---

[8] As we stated in *Safarian I,* although not determinative, we may consider the structure of the relationship. 622 F. App'x at 151.

after application of the *Martin* factors was supported by undisputed record evidence. In light of this record support, the District Court correctly decided that Safarian was not an employee of ADG for the purposes of federal law.

C.

Lastly, we will address Safarian's state statutory claim. In particular, Safarian argues the District Court erroneously granted summary judgment to ADG on his CEPA claim.

The CEPA defines an "employee" as "any individual who performs services for and under the control and direction of an employer for wages or other remuneration." N.J.S.A. 34:19-2(b). New Jersey courts have adopted the following twelve-factor test to determine whether a plaintiff is an "employee":

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation— supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

*D'Annunzio v. Prudential Ins. Co. of Am.*, 927 A.2d 113, 123 (N.J. 2007) (quoting *Pukowsky v. Caruso*, 711 A.2d 398, 404 (N.J. Super. Ct. App. Div. 1998)). In applying these factors, courts must consider "the extent to which there has been a functional integration of the employer's business with that of the person doing the work" and "the worker's economic dependence on the employer's work . . . ." *Id.* at 123–24.

Although the District Court's analysis regarding the CEPA claim was more cursory than its federal analysis, it was still sufficient to be consistent with our remand order. The District Court identified which factors supported the finding that Safarian was an independent contractor and which factors supported the finding that he was an employee. The District Court also made note of the special considerations required by *D'Annunzio*, which weighed in favor of finding that Safarian was an employee. On balance, however, the District Court concluded that the facts suggesting Safarian was an independent contractor outweighed the facts suggesting he was an employee. We conclude that the undisputed evidence in the record, which supported the District Court's conclusion regarding the FLSA claim, also supported this conclusion. For this reason, we cannot say the grant of summary judgment in favor of ADG on the CEPA claim was erroneous.[9]

IV.

Based on the foregoing, we will affirm the District Court's November 24, 2015, December 29, 2015, and December 5, 2016 orders, as well as its February 23, 2017 judgment.

---

[9] Additionally, because the District Court correctly granted summary judgment on Safarian's FLSA and CEPA claims, it did not err when it declined to reconsider these rulings.